UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

VICKI L. BENEDETTO

       Plaintiff,

      v.

JO ANNE B. BARNHART

Commissioner of Social Security,

      Defendant.

Civ. No. 05-3004 (WGB)

OPINION

APPEARANCES:

LANGTON & ALTER
Abraham S. Alter, Esq.
P.O. Box 1798
2096 St. Georges Avenue
Rahway, NJ 07065
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
By:  Jennifer S. Rosa
    Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant

BASSLER, Senior District Judge:

     Plaintiff, Vicki L. Benedetto ("Plaintiff"), brings this

action pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks review of

the final decision of the Commissioner of Social Security ("the

Commissioner") denying her claim for Disability Insurance

Benefits ("DIB").  Plaintiff requests that the Court reverse, or

in the alternative, remand the Commissioner's decision.  For the

reasons set forth below, the Commissioner's decision is affirmed.

I.   **BACKGROUND**

   A.   **Factual History**

   Plaintiff is a forty-four year old woman with a high school education and prior work experience as a grocery store cashier. (R. at 13, 23).  Plaintiff has a history of low back pain due to two injuries.  (R. at 13).  The first injury occurred in 1988, and the second one resulted from lifting a heavy bag at work on January 23, 2000.  Id.  Plaintiff claimed that she suffered a herniated disc of the spine from the second injury and became disabled thereafter.  Id.  Plaintiff received full workmen's compensation benefits from January of 2000 through July 2002, and then reduced benefits until April 2003.  (R. at 365-67).

   Plaintiff sought various types of treatment for her injury between January 2000 and July 2001, including epidurals, pain medication, and physical therapy.  (R. at 369, 373).  On August 1, 2001 Plaintiff had a "[l]umbar laminectomy with a microdiscectomy and also interbody fusion with raised cages," which was performed by Dr. Muhammed Memon in Florida.  (R. at 142, 369-70).  Plaintiff returned to New Jersey after this operation and was seen by Dr. David D. Bullek of the Center for Orthopedic Surgery and Sports Medicine from December 2001 until June 2002.  (R. at 325-27).

   Dr. Bullock referred Plaintiff to HealthSouth for physical

2

therapy, which lasted from January 3, 2002, through June 7, 2002.
(R. at 163-296).  The discharge summary from HealthSouth, dated
June 7, 2002, indicated that Plaintiff still had "occasional
radiating pain" in the low back region, and that her current
ADL/Functonal work status was "Unable to Work Secondary to
Dysfunction."  (R. at 163-64).  The report noted Plaintiff's
ability to stand and to bend at the waist was mildly limited, she
was fully able to sit comfortably and to raise her arms overhead,
and she had a seventy-five percent overall improvement.  (R. at
163).  The report stated that Plaintiff had made "fair
improvements at this time," and had a "fair prognosis at time of
discharge," and it concluded with a recommendation that Plaintiff
continue with a home exercise program after being discharged. (R.
at 165).

Dr. Bullek also sent Plaintiff to Summit Pain Management and
Palliative Care ("Summit Pain Management"), for pain management
in February 2002, where she was treated by Dr. Andrew Kaufman
from February 2002 through April 2003.  (R. at 341-59).  Dr.
Kaufman prescribed various pain medications including Bextra,
Mobic, Neurontin, Percocet, and eventually Methadone.  (R. at
341-50).  Plaintiff was placed on Methadone in an attempt to
reduce her dependence on these prescribed pain medications.  See
Plaintiff's Memorandum of Law ("Pl. Br.") at 10.  In Dr.
Kaufman's final report of April 25, 2003 he writes that Plaintiff

3

"in addition to the usual left leg burning pain" is now having
"greater frequency of right leg/foot pain," and that Plaintiff
describes having "bilateral parasthesias as well as greater
incidence of burning." (R. at 341). Dr. Kaufman also wrote that
he did not think an increase in Neurontin would help because
Plaintiff became sedated at higher doses, and he discussed
medication versus transforaminal injections with Plaintiff, who
agreed she needed to do something else.  Id.

On June 3, 2002, Dr. Bullek saw Plaintiff and wrote that she
was no different and would need a functional evaluation, and "at
that point she will have reached max benefit [and] will need to
be permanently restricted based upon her pain.  She'll need
chronic pain care." (R. at 325). Plaintiff was then given a
functional capacity evaluation ("FCE"), and kinematic assessment
at Kinematic Consultants, Inc. on June 25, 2002. (R. at 301).
The  assessment report found that Plaintiff had a "mild residual
functional deficit," and was capable of resuming work as a
grocery clerk with altered duty, which meant seeking assistance
if required to lift a load over 35 pounds. (R. at 311-12).  The
report concluded that if Plaintiff was unable to obtain altered
duty status as a grocery clerk, she was capable of performing
"any job in the Light-Medium work category with similar action
requirements." (R. at 312). Dr. Bullek signed the report and
initialed agreement with its return to work status

recommendation.  (R. at 313).  Following this report, Plaintiff's
workmen's compensation benefits were terminated as of July 3,
2002.  (R. at 16).

     The record also includes testimony of Dr. Marvin Chirls,
M.D., a specialist in orthopedic surgery, who appeared as a
medical expert at the request of the Administrative Law Judge
("ALJ") Ralph J. Muehlig.  (R. at 377).  ALJ Muehlig presided
over Plaintiff's reconsideration hearing for Disability Benefits
on August 25, 2003.  <u>Id.</u>  Dr. Chirls testified that there was no
objective medical evidence to substantiate Plaintiff's complaints
of lower back pain and he noted that from July 2002 onward,
Plaintiff had a residual functional capacity that enabled her to
perform light to medium work.  (R. at 394, 404).  Dr. Chirls also
disputed that Plaintiff had ever had a herniated disc and
suggested that Plaintiff received pain medication that was not
medically indicated.  (R. at 382, 394).

     **B.   <u>Procedural History</u>**

       Plaintiff filed an application for DIB on June 4, 2003,
alleging disability as of January 23, 2000.  (R. at 13).  The
claim was denied initially and upon reconsideration.  (R. at 13).
Plaintiff filed a timely request for a hearing, which was held on
August 25, 2003 before ALJ Ralph J. Muehlig.  (R. at 13, 20).
The ALJ issued a partially favorable decision on September 18,
2003 finding that Plaintiff was entitled to DIB for a closed

period of January 23, 2000 until July 3, 2002.  (R. at 18).  The
ALJ found that after July 3, 2002 Plaintiff was not under a
disability and the ALJ issued a decision denying Plaintiff's
request for benefits.  Id.  Plaintiff then sought review from the
Appeals Council, which denied Plaintiff's request for review and
thereby made the ALJ's decision final.  Plaintiff filed this
action on June 13, 2005.  See Plaintiff's Complaint ("Compl.") at
1.

   C.  **The ALJ's Decision**

   To determine a claimant's eligibility for disability
benefits, the Commissioner applies the five-step sequential
evaluation process set forth in 20 C.F.R. § 404.1520.  First, a
claimant must not be engaged in any "substantial gainful
activity."  20 C.F.R. § 404.1520(b).  Second, the claimant must
have a severe impairment that significantly limits her ability to
work.  20 C.F.R. § 404.1520 (c).  At the third step, the ALJ
compares the claimant's injury to the Listing of Impairments in
20 C.F.R. § 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(d).  If
the claimant does not suffer from an impairment listed in the
Appendix, or its equivalent then the analysis proceeds to the
fourth and fifth steps.  20 C.F.R. § 404.1520 (e).

   In step four, the ALJ must assess the claimant's residual
functional capacity ("RFC").  20 C.F.R. § 404.1520(e).  A
claimant's RFC is measured by evaluating all relevant medical and

6

other evidence.  20 C.F.R. § 404.1545(a).  The ALJ must consider the claimant's ability to meet the physical, mental, sensory and other requirements of work.  <u>Id.</u>  In determining a claimant's RFC, the ALJ must consider even those impairments which are not severe.  20 C.F.R. 404.1520(e).  If the claimant can return to her past relevant work then the ALJ will find her not disabled, otherwise the ALJ must proceed to step five.  20 C.F.R. 404.1520(f).  At step five, the ALJ must consider the claimant's RFC, age, education and work experience to determine if there is other work which exists in significant numbers in the national economy that the claimant could perform.  20 C.F.R. 404.1520(g). The first four steps place the burden of proof on the claimant, while the last step shifts the burden to the Commissioner, who then must prove that the claimant is able to perform other work. 20 C.F.R. § 416.920; <u>see also</u> <u>Wallace v. Secretary of Health and Human Services</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).

In the first step of the sequential evaluation analysis, ALJ Muehlig found that Plaintiff had attempted to work for a short period following her injury but was forced to stop after one week because of back pain, and therefore Plaintiff had not been engaged in any "substantial gainful activity" since her accident. (R. at 14).  At step two, ALJ Muehlig determined that Plaintiff has degenerative disc disease, which is a severe impairment within the Regulations.  <u>Id.</u>  ALJ Muehlig found, however, at the

7

third step that Plaintiff's injury did not meet any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (R. at 14). At the fourth step, ALJ Muehlig found that Plaintiff has the residual functional capacity to perform light work activity. (R. at 18). ALJ Muehlig concluded that Plaintiff was able to resume her prior work as a grocery cashier, which is listed as requiring light exertion in the Dictionary of Occupational Titles ("DOT"), section 211.462-014. Id. Finally, ALJ Muehlig determined that Plaintiff had been under a disability from January 23, 2000 until July 3, 2002, and found that there were no jobs existing in significant numbers in the national economy which Plaintiff could have performed during this closed period. Id.

After evaluating all of the evidence, the ALJ specifically made the following relevant findings:

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease is a severe impairment, based upon the requirements in the Regulations (20 CFR § 404.1521).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

8

7.  The claimant had the following residual functional
    capacity for the closed period of January 23, 2000
    until July 3, 2002: less than a full, wide or
    significant of sedentary work.  After July 3, 2002 she
    is found capable of light work activity.

8.  In view of the claimant's severely diminished residual
    functional capacity during the closed period of January
    23, 2000 until July 3, 2002, she was unable to perform
    her past relevant work and there were no jobs existing
    in significant numbers in the national or local economy
    that she could have performed.  After July 3, 2002 the
    claimant is capable of light work activity.  The
    claimant's past work as grocery cashier does not
    require the performance of work-related activities
    precluded by her residual functional capacity after
    July 3, 2002 (20 CFR § 404.1565).

9.  The claimant's medically determinable degenerative disc
    disease does not prevent the claimant from performing
    her past relevant work after July 3, 2002.

10. The claimant was disabled for the closed period of
    January 23, 2000 until July 3, 2002.  After July 3,
    2002 she has not been under a "disability" as defined
    in the Social Security Act, at any time through the
    date of the decision (20 CFR §§ 404.1520(e)).

11. There is evidence in the file that the claimant has
    collected workmen's compensation benefits since the
    alleged onset date.

(R. at 18-19).

## II.  STANDARD OF REVIEW

This court has jurisdiction to review the Commissioner's

decision under 42 U.S.C. § 405(g).  The Court is limited in its

review to determining whether the Commissioner's decision is

supported by "substantial evidence."  42 U.S.C. § 405(g); see

also Richardson v. Perales, 402 U.S. 389, 410 (1971); Mason v.

Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Substantial

evidence means "more than a mere scintilla . . . [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938). Upon reviewing the Commissioner's decision, the Court may affirm, modify or reverse the decision with or without remanding for a rehearing.  42 U.S.C. § 405 (g).  The Court may not, however, conduct a de novo review, but rather must affirm the Commissioner's decision if it is supported by substantial evidence, even if the record could support a different conclusion.  Id.; Alexander v. Shalala, 927 F. Supp. 785, 791 (D.N.J. 1995).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must examine: "1) objective medical facts; 2) diagnoses and expert opinions of treating and examining physicians; 3) subjective evidence of pain; and 4) the claimant's educational background, work history and age." Snee v. Sec'y of Health and Human Servs., 660 F. Supp. 736, 738 (D.N.J. 1987) (citation omitted).  If such evidence exists, "it is of no consequence that the record contains evidence which may also support a different conclusion." Pearson v. Barnhart, 380 F. Supp. 2d 496, 503 (D.N.J. 2005).

## III. DISCUSSION

Plaintiff argues three grounds for finding that the ALJ's

decision was not supported by substantial evidence: 1) the ALJ's residual functional capacity assessment fails to explain why he found Plaintiff disabled from January 23, 2000 until July 3, 2002, but not disabled from July 3, 2002 thereafter; 2) the ALJ did not engage in any pain evaluation as is mandated by the Commissioner; and 3) the ALJ did not give Plaintiff an opportunity to testify in full at her hearing.

The Court finds that the ALJ performed a proper assessment of Plaintiff's RFC and there was substantial evidence to support his finding that Plaintiff was disabled from January 23, 2000 until July 3, 2002, but was no longer disabled after July 3, 2002.  Additionally, there is no evidence to support Plaintiff's contention that she did not have a full opportunity to testify at her hearing.

**A.   The ALJ Appropriately Assessed Plaintiff's RFC**

After determining that Plaintiff's degenerative disc disease was a severe impairment that did not medically equal any of the listed impairments in Appendix 1, ALJ Muehlig considered whether Plaintiff retained the RFC to perform her past relevant work as a grocery cashier.  (R. at 14-15).  The ALJ noted that the Regulations define RFC as the most a person can still do after taking into account the physical and/or mental limitations that affect her ability to perform job-related tasks.  (R. at 15). Plaintiff contends that an ALJ's assessment of a claimant's RFC

is determinative of benefits and that ALJ Muehlig failed to explain contradictory evidence which showed Plaintiff was disabled after July 3, 2002. (R. at 12, 15-16). Plaintiff cites the decision in Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981), which required that an ALJ indicate evidence in support of the result, as well as rejected evidence. (R. at 6). The court in Cotter held that the ALJ's dismissal of probative medical evidence without explanation was error. Id. at 707. The Court finds that Cotter is distinguishable from the present case because ALJ Muehlig considered conflicting evidence that supported the Plaintiff's claim and explained why he did not find such evidence persuasive.

### 1. The ALJ Did Not Rely Solely on Dr. Chirls' Testimony in Making His Assessment

Plaintiff argues that the ALJ relied solely on the testimony of Dr. Chirls, the medical examiner, and states, "The instant case is before this Court for only one reason. That reason is the testimony of Dr. Marvin Chirls." (Pl. Br. at 8). Plaintiff contends that the ALJ reached his conclusion "only . . . by ignoring the medical evidence and adopting the fictional ravings of his hand-chosen medical expert."[1] (Pl. Br. at 11-12).

---

[1]This Court previously admonished Plaintiff's attorney for similarly intemperate remarks: "It must be noted, that Plaintiff's attorney does his client a grave disservice by engaging in verbal attacks . . . . These insulting remarks pervade Plaintiff's brief and essentially discredit Plaintiff's position. Such language is strongly discouraged by this Court as

Plaintiff cites Dr. Chirls' statements that Plaintiff did not have radiculopathy, did not suffer chronic low back syndrome, and never had a herniated disc. (Pl. Br. at 9-10).

Plaintiff was diagnosed with a "chronic low back problem," and on August 1, 2001 Dr. Memon stated in both his preoperative and postoperative diagnoses that Plaintiff had "[l]umbar radiculopathy from herniated disc at the level of L4-L5 centrally and towards the left side."[2] (R. at 142-43). Despite Dr. Chirls' testimony, ALJ Muehlig noted that "the record reveals that the claimant has a history of low back pain," and "[t]he examiner diagnosed continual lumbar radiculopathy associated with chronic irritation of the L5 nerve root." (R. at 15-16).

Nevertheless, even Plaintiff's treating physician, Dr. Bullek, supported the ALJ's RFC finding. (R. at 16). The ALJ noted that Dr. Bullek found "no objective findings to substantiate L5 herniated disc." (R. at 17). Dr. Bullek agreed with the functional capacity evaluation performed at Kinematic Consultants Inc., which concluded that Plaintiff could return to her prior work as of July 2002. (R. at 313). Plaintiff's physical therapists at HealthSouth also noted significant improvement in her condition by June 2002. (R. at 16). In

---

well as the Local Rules for the District of New Jersey and the Third Circuit's Local Appellate Rule 28.1." Ismail v. Barnhart, No. 04-2615, at fn. 2 (D.N.J. October 7, 2005).

[2]Lumbar radiculopathy concerns nerve irritation to the discs between the vertebrae.

addition to this testimony, ALJ Muehlig adopted Dr. Chirls'
conclusion that Plaintiff had an ability to return to work as of
July 2002, with an RFC for light to medium work.  (R. at 17).

The Court finds that while there may be factual disputes
concerning Dr. Chirls' statements, ALJ Muehlig did not rely
solely on this testimony in making his determination about
Plaintiff's RFC.

### 2.    The ALJ Considered Other Medical Evidence in Assessing Plaintiff's RFC

The record shows that ALJ Muehlig evaluated the various
treatments Plaintiff sought and doctors who treated her
including: 1) Plaintiff's treating physicians Dr. Memon, Dr.
Bullek, and Dr. Kaufmann; 2) the physical therapy reports of
HealthSouth; and 3) the June 7, 2002 functional capacity
evaluation by Kinematic Consultants.  (R. at 15-17).  The
Regulations state that generally more weight is accorded to
opinions from treating sources than to non-treating sources who
have not examined a claimant.  20 CFR 404.1527(d)(1).
Furthermore, the Regulations provide in 404.1527(d)(2) that:

> If we find that a treating source's opinion
> on the issues(s) of the nature and severity
> of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory
> diagnostic techniques and is not inconsistent
> with other substantial evidence in your case
> record, we will give it controlling weight.

ALJ Muehlig discussed Plaintiff's surgery for lumbar
laminectomy in Florida and then her subsequent treatment with Dr.

14

Bullek in New Jersey beginning in December 2001. (R. at 15).
The ALJ noted that Dr. Bullek stated on December 31, 2001 that
"the claimant had no objective findings to document any
problems," and that he would not prescribe narcotics because they
were not appropriate. (R. at 15). Id.

Plaintiff contends that "the ALJ seems to cease plaintiff's
benefits . . . on the basis of a worker's compensation medical
cut-off and vague reference to a physical therapy report claiming
[P]laintiff could lift 35 pounds," and disputes that anything in
the worker's compensation cut-off "even remotely suggests that
[P]laintiff can return to work." (Pl. Br. at 14).

The record reflects, however, that the ALJ carefully
considered the detailed report of the June 25, 2002 functional
capacity evaluation, to which Plaintiff refers. ALJ Muehlig
noted that at the examination Plaintiff "reported pain and
difficulty coming up from a bent position, prolonged sitting or
standing, or when lying down." (R. at 16). The ALJ also
observed, however, that the examiners reported that Plaintiff
performed the exam with less than maximum effort. (R. at 16).
The examiners noted that they could not guarantee that "the work
recommendations represent this Examinee's actual maximum
capacity." (R. at 312). The examiners determined that Plaintiff
could lift up to 35 pounds and was able to return to work as a
grocery clerk. (R. at 16). Finally, the ALJ emphasized that Dr.

15

Bullek signed the FCE report and agreed with its conclusion regarding Plaintiff's return to work status.  Id.

Plaintiff points out that ALJ Muehlig did not discuss Dr. Bullek's June 3, 2002 statement that "[Patient] is no diff[erent] . . . and will need to be permanently restricted based upon her pain. She'll need chronic pain care." (R. at 325).  This statement by itself might suggest Plaintiff's position that she was disabled, but as already noted, Dr. Bullek subsequently signed the June 7, 2002 FCE work assessment, which stated that Plaintiff could return to work.  (R. at 313).  As no other evidence was introduced that Plaintiff could not work, the Court accords Dr. Bullek's assessment controlling weight that Plaintiff could return to work after July 3, 2002.

Lastly, the ALJ noted that the DOT section 211.462-014 indicates that the job of a grocery store cashier requires light exertion, with occasional stooping and crouching. (R. 18).  ALJ Muehlig found that from January 23, 2000 until July 3, 2002 Plaintiff was unable to perform her past relevant work "[d]ue to her severely diminished residual functional capacity," but after July 3, 2002, Plaintiff was not under a disability as defined in the Social Security Act.  Id.  The Court finds that the ALJ properly assessed Plaintiff's RFC and that there was substantial evidence to support the ALJ's finding that Plaintiff's allegations regarding her limitations were "not totally credible"

16

and that she was capable of returning to her prior work as a grocery clerk.

**B.    The ALJ Properly Evaluated Plaintiff's Pain Complaints**

ALJ Muehlig recognized that an assessment of Plaintiff's RFC "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (R. at 15).  Plaintiff asserts, however, that the ALJ did not give serious consideration to Plaintiff's subjective complaints of pain.  (Pl. Br. at 17). Plaintiff correctly notes that a claimant's testimony regarding pain must be given serious consideration and may by itself establish a disability.  See Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981); Chrupcala v. Heckler, 829 F.2d 1269, 1275 (3d Cir. 1987).  A claimant's subjective claims of pain without independent medical evidence, however, will not establish a disability.  Chrupcala, 829 F.2d at 1274.  The Regulations under 42 U.S.C. § 423(d)(5)(A) provide that:

> An individual's statement as to pain or other
> symptoms shall not alone be conclusive
> evidence of disability as defined in this
> section; there must be medical signs and
> findings, established by medically acceptable
> clinical or laboratory diagnostic techniques,
> which show the existence of a medical
> impairment that results from anatomical,
> physiological, or psychological abnormalities
> which could reasonably be expected to produce
> the pain or other symptoms alleged . . .
> Objective medical evidence of pain or
> symptoms . . . must be considered in reaching
> a conclusion as to whether the individual is

17

under a disability.

Plaintiff argues that ALJ Muehlig failed to follow the
Commissioner's mandate under the Regulations that the adjudicator
must not simply "recite the factors that are described in the
Regulations for evaluating symptoms," but that "[t]he
determination or decision must contain specific reasons for the
finding on credibility, supported by evidence in the case
record." (Pl. Br. at 19 citing SSR 96-7P, 1996 WL 374186 SSA).

The Court finds that ALJ Muehlig listed specific factors in
his evaluation of Plaintiff's pain.  The ALJ thoroughly discussed
Plaintiff's pain management treatment at Summit Pain Management.
He recognized that "[w]hile the claimant may have some residual
pain and limitations from her prior surgery, all testing and
treatment indicate that she did experience improvement after
successful surgery in her ability to move about, flex her spine,
toe and heel walk, and lift weights." (R. at 16).

The ALJ also considered Plaintiff's "lengthy period of
physical therapy" at HealthSouth from January 2002 through June
2002.  Id.  ALJ Muehlig found that Plaintiff's condition improved
beginning May 2002 and continuing through December 2002; she
reported walking and swimming in June, her muscle tone was normal
and she reported no distress sitting in September, and by October
she reported doing much better and not suffering her prior severe
soreness and spasm.  Id.  In December 2002, ALJ Muehlig noted

18

Plaintiff complained of low back pain radiating into her left leg and some tenderness was observed on her left leg, but there was no muscle spasm and her forward flexion had reached sixty degrees.  Id.

    The ALJ concluded that "the claimant's impairment improved after successful surgery and therapy, and that she was now capable of light work, or of lifting up to twenty pounds occasionally and standing and or walking up to six hours out of an eight hour workday."  (R. at 17).

    **C.    The ALJ Did Provide an Opportunity for Plaintiff to Testify in Full at Her Hearing**

    Plaintiff's final argument is that she was not allowed to fully testify because the ALJ interrupted her testimony and asked if he could "go to the doctor."  (R. at 377).  Plaintiff maintains that her counsel replied "sure" and allowed the ALJ to question Dr. Chirls with the understanding that her testimony would resume later or that a supplemental hearing would be held. (Pl. Br. at 22).  Plaintiff contends that when her attorney attempted to resume her testimony, "the ALJ interrupted with 'I can't do that today,'" and she was never given an opportunity to discuss "her medications, her daily activities, her current complaint, etc."  (Pl. Br. at 21-22).

    The record shows that Plaintiff testified extensively as to the history of her injury and subsequent treatment.  (R. at 363-77).  ALJ Muehlig continued questioning Plaintiff during Dr.

Chirls' testimony and she discussed her medication and current complaints of pain. (R. at 378-79, 383, 398-99).  Finally, the ALJ did not commit to holding a supplemental hearing, and when Plaintiff's attorney was asked if he had anything else, he agreed to move to his closing argument.  (R. at 429).

**IV.  CONCLUSION**

For the reasons stated in this Opinion, this Court affirms the Secretary's decision to deny the claimant Disability Insurance Benefits.

An appropriate Order accompanies this Opinion.


Dated July 25, 2006

                                    /S/ WILLIAM G. BASSLE
                                    William G. Bassler, U.S.S.D.J.

: